No. 68.—JAMES A. MILLER, plaintiff in error, vs. SAMUEL MADDOX and others, defendants in error.

When there is no equity in a bill, on the filing of which an injunction was ordered, or when the answer denies the equity, if any, the injunction ought to be dissolved.

In Equity, from Crawford Superior Court.   Decision by Judge Powers.   September Term, 1856.

Motion to dissolve injunction upon bill and answer.

This bill was filed by James A. Miller, complainant, against Samuel Maddox, A. B. Dulin, and the Sheriff of Crawford county; and sets forth that sometime ·in the year 1848, said Dulin negotiated a purchase of a large body of land on Flint river, (the lots and Nos. are particularly set out in the bill,) from said Maddox for the sum of $4,000 ; paid $1,000 in cash, and gave his notes for the balance in three equal installments ; and Maddox executed to him his bond, conditioned to make titles when the notes were paid.   Afterwards, in August, 1850, complainant purchased said lands of Dulin, for the sum of $7,000, and executed and delivered to him two notes, each for the sum of $3,500, one due 25th December, 1850, and the other due 25th December, 1851, and took his bond conditioned to make titles to said land upon the payment of said notes.   The description of the lands in Dulin's bond corresponded with, and was intended as an exact counterpart of the description in Maddox's bond to Dulin.

Complainant paid the first note when it came due, and the other having been transferred by Dulin to R. & J. Caldwell & Co., S. C., and fearing that from said Dulin's pecuniary embarrassments, he being insolvent, that he had not paid the purchase money to Maddox, and that he would be unable to get titles to said land, he and Dulin went to Maddox, who informed c mplainant that Dulin was owing him $2,000 on the said purchase, and that was the amount of his lien on said land, but he refused to accept the money from, or substitute complainant in the place of Dulin.

Complainant and Dulin afterwards meeting with one of the firm of Caldwell & Co., Dulin turned over to them a large lot of cotton, and had a credit of $2,000 entered on complainant's note, and he paid the balance of said note himself,

and gave Dulin his note for the $2,000, to be paid when he received titles for said land ; that this arrangement was made to protect complainant against the $2,000 still due from Dulin to Maddox ; and if he had known that there was a larger amount unpaid by Dulin to Maddox, he could have protected himself by having a larger credit given to Dulin on the note in the hands of Caldwell & Co. Maddox has since sued Dulin on *three notes, each for* $1,000, balance due for said purchase money ; has recovered judgement in his own name for $2,000, and for use of another for about $1,000, besides interest ; has made titles to Dulin, and has levied upon said lands under and by virtue of said judgments and fi. fas. issued thereon.

The bill further charges that one of the fractional lots of land, described in said bond for titles as containing 140 acres, in fact contains but about 40 acres. The bill prays for an injunction, and that upon the payment of $2,000, less the value of one hundred acres of land, being the deficit in the fractional lot, by complainant, that Maddox be decreed to execute good and fee simple titles to him for said land.

The answer of Maddox, who is a very old man, over ninety years of age, admits most or all of the charges in the bill, except two ; those relating to the amount of his demand against Dulin, and the deficiency in the fractional lot. As to the first, he denies emphatically that he ever told or represented to Miller that he had only $2,000 against Dulin ; but on the contrary he told him that there were three notes of $1,000 each, besides interest, still due from Dulin, for the purchase money of the land. That one of said notes he had given to the Flint River Baptist Association for Missionary purposes, and which note was not in law negotiable, not having any negotiable words therein, but was payable only to the defendant ; he denies any fraud or misrepresentation, or any attempt to injure or deceive complainant as to the amount due by Dulin.

That the deficit in one of the fractional lots, he was aware of, before he sold to Dulin, and informed him of the fact, but

Miller vs. Maddox.

Dulin drew up the bond and all the papers, and from the want of sight and hearing, occasioned by the extreme age of defendant, he did not detect the error when the bond was read to him, but that a deduction therefor had been allowed Dulin in a suit which had been brought on one of the notes.

Dulin answered the bill and admitted all the material allegations; did not hear Miller propose to pay Maddox the cash for the balance due to him on the purchase money of the land.

Upon the hearing, counsel for Maddox moved to dissolve the injunction on the ground that all the equities in the bill were denied and sworn off by the answer; which motion the Court allowed and ordered the injunction to be dissolved and that the fi. fas. proceed. And counsel for complainant excepted.

Poe & Grier, for plaintiff in error.

Borders, for defendant in error.

*By the Court.*—McDonald, J. delivering the opinion.

This is a most extraordinary bill, and we have looked through it carefully, but in vain, to find the slightest equity against the defendant Maddox. If the answer of Maddox, then, discloses no facts which entitle the complainant to a continuance of the injunction, it ought to have been dissolved. The complainant does not allege that Maddox was guilty of fraud in the sale of the land to Dulin. Dulin does not complain. Complainant no where alleges that Dulin defrauded him in the sale of the land, or that he bought the fraction described in the bond as containing one hundred and forty-two acres according to that description and for that quantity, when it contained only forty acres. The allegation is that Maddox, by the misrecital in the bond of the number of acres which the fraction contained, enabled Dulin to deceive him, but it is no where alleged that Dulin did de-

ceive him ; he does not say that the land was bought by the description in the bond and not by his own examination, nor does he state that if he did so contract, that Maddox *induced him* to do it. The allegation is, that the bond of Dulin to complainant is substantially a copy of that of Maddox to Dulin. Fraud certainly cannot be inferred from that, because the trade must have been agreed upon before the bond was written.

There is as little ground to impute fraud to Maddox in the interview sought for the purpose of ascertaining how matters stood, and if an arrangement could be made by which complainant could obtain a good title to the land. It is complained that Maddox would not receive the money from complainant nor substitute him for Dulin as his debtor. Was he under any legal obligation to do either? His contract was with Dulin, who held his bond. The bond was not produced, nor the money tendered and a title demanded.

The complainant does not allege that he did not know that three thousand dollars remained unpaid by Dulin for the land, or that he was misled in that respect, in the conversation with the defendant. The injury resulting to complainant from this interview, according to the bill, was, that he had it in his power to have arranged with Dulin and the Caldwells to have the entire amount of his note of $3,500, or such part thereof as was necessary to pay Dulin's note to Maddox, applied in that way. It does not appear that the object of the complainant's interview with Maddox, was to arrange to secure himself. On the contrary, the meeting with Caldwell subsequently was accidental, and then, through Dulin, he succeeded in having a credit put on his note to Dulin of two thousand dollars, which was in the hands of the Caldwells, and for this two thousand dollars he gave his note to Dulin to be paid when he obtained good titles to the lands. Now this was Dulin's money, when the Caldwells received cotton to that amount from him. This money Dulin ought

to have paid to Maddox.   Instead of that he took the note of complainant with the condition above stated.   Dulin was hopelessly insolvent and therefore could not pay Maddox; complainant had the land and money both, and enjoins Maddox from using the only legal means left him to collect his money.

This is a bill to enforce the specific performance of a contract when the purchase money has not been paid, and no offer has ever been made to pay the whole.   It is not instituted by the party with whom the contract was made, but by his vendee, claiming an equity growing out of the foregoing circumstances.   He does not pretend that he did not know the entire consideration of the original purchase unpaid, amounted to three thousand dollars; but he insists that defendant had traded or transferred one of the notes, and that he, holding only two of them, had no lien beyond them. This is not a bill to enforce his lien.   If it was, he could claim nothing beyond the notes he continues to hold, except under special circumstances.   The suit is at the instance of another party, who, without paying the entire consideration, calls on the Court to compel him to execute a contract by making a title to the land he sold.   Courts of Chancery exercise a very salutary discretion, (for it is a discretion) in such applications, and will not run the risk of doing an injustice in such cases.   *Story's Eq. Jurisprudence*, § 769.   It is unnecessary to discuss the moral or legal obligations the defendant may be under to the transferee of the note he has passed off.   Dulin certainly could not claim an execution of a title to the land until he paid every dollar of the purchase money, there being no charge in the bill entitling him to a rebatement of it; and the complainant occupies no better position.   We do not see the slightest grounds of equity in favor of the complainant.; but if the most material charges in the bill, in the view entertained of them by complainants counsel, do contain an equity, they are denied by the defendant Maddox.

The defendant admits that complainant called on him at his residence twice, in 1852, and 1853, but does not recollect or believe that he was accompanied by Dulin; if he was, defendant did not see or recognize him. The answer states that defendant is about ninety years of age, that his vision is so impaired that he cannot recognize any one by sight alone, he cannot read writing, and that he is unable to hear or converse except in a loud tone of voice. He denies that he ever told complainant that the lien he held was for two thousand dollars, or that complainant offered to pay him two thousand dollars, but that he proposed to give his notes in place of Dulin's, and that defendant should execute a deed or bond to him, which he declined. He avers that in both interviews he told complainant, that there were three notes of of a thousand dollars each, due, that he had transferred one of them. He denies ever deceiving or attempting to deceive complainant.

In regard to the fraction recited in the bond to Dulin to contain one hundred and forty-two acres, when, in fact, it contains forty acres only, the answer says that Dulin examined the land in a body lying on each side of Flint river, and that defendant expressly stated to him that the fraction contained forty acres only, and not as many acres as it was reported to contain; that having confidence in Dulin he handed him his papers to draw the bond, which he did, and that the misrepresentation in the bond, of the number of acres the fraction contained, was the mistake or fraud of Dulin.

In every view we have taken of this case, our judgment is that the Court committed no error in dissolving the injunction. The answer of Dulin cannot affect the rights of his co-defendant.

Judgment affirmed.